UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|   |   |
|---|---|
| NORFOLK SOUTHERN RAILWAY COMPANY, | Case No. 1:20-cv-01053 |
|  | Judge J. Philip Calabrese |
| Plaintiff and Counterclaim-Defendant, | Magistrate Judge Jonathan D. Greenberg |
| v. |  |
| DILLE ROAD RECYCLING, LLC, |  |
| Defendant and Counterclaim-Plaintiff. |  |

## OPINION AND ORDER

Dille Road Recycling, LLC owns property in Euclid, Ohio adjacent to a rail corridor in which Norfolk Southern Railway Company conducts its business. For its part, Dille Road Recycling has made significant investments in the property that it seeks to preserve through claims of adverse possession, a prescriptive easement, and easement by estoppel, based on use it traces back decades to its predecessors. Norfolk Southern seeks a judgment on the pleadings that federal law preempts these claims. For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** Norfolk Southern's motion for judgment on the pleadings.

## STATEMENT OF FACTS

Dille Road Recycling owns land and operates a recycling business in Euclid, Ohio. (ECF No. 1, ¶ 1, PageID #1.) It acquired the property on January 1, 1989, but leased the property before that—dating back to 2007. (ECF No. 5, ¶¶ 5 & 7,

1

PageID #27.) For over thirteen years, Dille Road Recycling has exclusively possessed the property and been the owner of record since 2016. (*Id.*, ¶¶ 4, 6.) Norfolk Southern Railway Company operates its railroad business on property adjacent to that of Dille Road Recycling. (*Id.*, ¶ 2.)

The property at issue is a rectangular, longitudinal strip of property, comprising just under half an acre, within Norfolk Southern's active rail corridor running parallel to the tracks and where Dille Road Recycling conducts certain activities without Norfolk Southern's permission. (ECF No. 1, ¶¶ 1–2, PageID #1–2 & ECF No. 1-1, PageID #10.) In their respective pleadings and motions, the parties use the following image to illustrate the location of the property relative to Norfolk Southern (above the rail lines (north)) and Dille Road Recycling (below them, toward the buildings (south)):



(ECF No. 1-1, PageID #10; ECF No. 5-1, PageID #32.) Dille Road Recycling alleges that, since 1994, a fence with a gate across the front entrance to the property shows its use of the property—or its predecessors'. (ECF No. 5, ¶ 11, PageID #28.) Further, Dille Road Recycling's predecessors exclusively used the property. (*Id.*, ¶ 9.)

In the early 2000s, Dille Road Recycling installed a large truck scale on the property at a cost of approximately $50,000. (*Id.*, ¶ 13.) Additionally, Dille Road Recycling made about $10,000 worth of repairs to the fence. (*Id.*) About three or four years ago, someone representing Norfolk Southern advised Dille Road Recycling that the truck scale and fence were on the railroad's property. (*Id.*, ¶ 14.) In July 2019, a property agent for Norfolk Southern notified Dille Road Recycling that it was encroaching on the railroad's property and that Norfolk Southern wanted to resolve

3

the issue. (ECF No. 1, ¶ 15, PageID #4.) A series of communications ensued, resulting in the commencement of this litigation. (*See generally id.*, ¶¶ 16–26, PageID #4–5.)

## STATEMENT OF THE CASE

Norfolk Southern filed suit seeking a declaratory judgment that federal law preempts Dille Road Recycling's claim to the property at issue through adverse possession and prescriptive easement. (*Id.*, ¶¶ 27–41, PageID #5–7.) Dille Road Recycling answered and counterclaimed. (ECF No. 5.) In Count One, the counterclaim seeks a declaration that Dille Road Recycling has a non-exclusive easement by estoppel, and Count Two asserts that laches bars Norfolk Southern from restricting use of the property at this point in time. (*Id.*, ¶¶ 16–29, PageID #29–30.)

Norfolk Southern moved for judgment on the pleadings. (ECF No. 12.) Pending a ruling on that motion, the railroad moved to stay discovery. (ECF No. 23.) Both motions are fully briefed. Also, Dille Road Recycling seeks leave *instanter* to file a surreply. Although the Court does not normally consider surreplies, the Court **GRANTS** that motion here because the case involves claims and counterclaims implicating an area of federal law that does not arise with great frequency.

## ANALYSIS

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings essentially constitutes a delayed motion under Rule 12(b)(6) and is evaluated under the same standard. *See, e.g., Holland v. FCA US LLC*, 656 F. App'x 232, 236 (6th Cir. 2016). In other words, judgment on the

pleadings is appropriate where, construing the material allegations of the pleadings and all reasonable inferences in the light most favorable to the non-moving party, the Court concludes that the moving party is entitled to judgment as a matter of law. *Anders v. Cuevas*, ___ F.3d ___, 2021 WL 70029, at *4, 2021 U.S. App. LEXIS 458, at *11 (6th Cir. Jan. 8, 2021). In construing the pleadings, the Court accepts the factual allegations of the non-movant as true, but not unwarranted inferences or legal conclusions. *Holland*, 656 F. App'x at 236–37 (citing *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)).

## I. Federal Preemption

As a threshold matter, the parties dispute whether the Interstate Commerce Commission Termination Act of 1995 preempts Dille Road Recycling's claims to the property at issue. Under the Termination Act, the Surface Transportation Board has exclusive jurisdiction over rail carriers that extends to all remedies otherwise available under State law. 49 U.S.C. § 10501(b). Specifically, the Termination Act provides:

> The jurisdiction of the Board over—
>
> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
>
> (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,

> is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

*Id.*

Under the Termination Act, the term "transportation" includes a "warehouse . . . property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning use." *Id.* § 10102(9)(A). Further, it includes "services related to that movement . . . and interchange of passengers and property." *Id.* § 10102(9)(B).

For purposes of the Termination Act, a "railroad" means "a switch, spur, track, terminal, terminal facility, and a freight depot, yard, and ground, used or necessary for transportation." *Id.* § 10102(6)(C).

### I.A. Preemption Under the Act

Under the law of this Circuit, the Termination Act "preempts all state laws that may reasonably be said to have the effect of managing or governing rail transportation, while permitting the continued application of laws having a more remote or incidental effect on rail transportation." *Adrian & Blissfield R.R. Co. v. Blissfield*, 550 F.3d 533, 539 (6th Cir. 2008) (quotations omitted). Further, the Sixth Circuit follows the Board's test for determining whether and the extent to which the Act preempts State remedies. *Id.* (quoting *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 332 (5th Cir. 2008)). This preemption analysis distinguishes

between categorical and as-applied preemption. *Id.* (quoting *Barrois*, 533 F.3d at 332).

### I.A.1. Categorial Preemption

First, categorical or facial preemption applies to State actions or remedies that directly conflict with exclusive federal regulation of railroads. *Id.* (quotations omitted). This approach preempts "any form of state or local permitting or preclearance that, by its nature, could be used to deny a railroad the ability to conduct some part of its operations or to proceed with activities that the Board has authorized." *Id.* (quotations omitted). Second, it also includes "state or local regulation of matters directly regulated by the Board—such as the construction, operation, and abandonment of rail lines; railroad mergers, line acquisitions, and other forms of consolidation; and railroad rates and service." *Id.* (quotations omitted). These State and local actions and regulations involve *per se* unreasonable interference with interstate commerce. *Id.*

### I.A.2. As-Applied Preemption

As-applied preemption requires a factual assessment of whether State action or regulation would have the effect of preventing or unreasonably interfering with railroad transportation. *Id.* (quotations omitted). In this analysis, the touchstone is whether the State action or remedy imposes an unreasonable burden on railroading. *Id.* at 541 (quotation omitted). In the case of as-applied preemption, the Board finds State regulations permissible so long as they are not unreasonably burdensome and do not discriminate against railroads. *Id.* (quotations omitted).

7

With respect to the former, a regulation is not unreasonable if it is sufficiently settled and definite, unless it is "so draconian that it prevents the railroad from carrying out its business in a sensible fashion." *Id.* (quoting *N.Y. Susquehanna & W. Ry. Corp. v. Jackson*, 500 F.3d 238, 254 (3d Cir. 2007)). As for non-discrimination, the action must address State concerns generally, without targeting the railroad industry. *Id.* (citation omitted). States retain their police powers so long as the resulting rules are clear enough for railroads to follow and are not pretextual. *Id.* Such regulations that result in reduced profits for railroads do not unreasonably interfere with railroads based on cost alone. *Id.* (quotations omitted).

**I.B. Norfolk Southern's Argument**

Norfolk Southern relies primarily on two authorities to argue that the Termination Act preempts Dille Road Recycling's claims under State property law.

1.

First, Norfolk Southern points to the Board's adjudication in *Jie Ao and Xin Zhou Petition for Declaratory Order*, No. FD 35539, 2012 WL 2047726 (June 4, 2012). There, the petitioners purchased five parcels of property adjacent to a railroad right of way. One parcel involved an area acquired by adverse possession, including a garage, driveway, and retaining wall. Another had a private roadway the petitioners claimed through a prescriptive easement. When the petitioners filed an action in State court, the matter was referred to the Board. Although the railroad had granted a local government use of the right of way as a trail, it argued that the petitioners'

8

claims threatened the physical stability of the track bed and otherwise limited the capacity and use of the railroad line, should it return to active service.

In discussing the scope of federal preemption under the Termination Act, the Board recognized that its jurisdiction "prevents application of state laws that would otherwise be available, including condemnation [and adverse possession] to take rail property for another use that would conflict with the rail use." *Id.* at *5 & n.4 (citations omitted). Broadly interpreting the scope of federal preemption, the Board determined that Section 10501(b) preempted the petitioners' claims based on adverse possession. *Id.* at *6. In reaching this conclusion, the Board analyzed the record on an as-applied theory of preemption, albeit a particularly strict variety under which relatively minimal, if any, effect on maintenance of the rail bed and hypothetical future use of the right of way resulted in preemption of State property law. *Id.* at *6–7. Adverse possession, in the Board's view, allows landowners to carve strips of land off railroad rights of way, undermining interstate commerce. *Id.* at *7.

In contrast, a prescriptive easement does not take railroad property; instead, it allows access or crossing to railroad property such that rail and non-rail use co-exist. *Id.* Generally, the Board determined that courts applying State law are better situated to adjudicate whether a landowner has a prescriptive easement. *Id.* On the record before it, and again employing the standard for as-applied preemption, the Board deferred to the courts to determine whether the petitioners' claim of a prescriptive easement for the private road would limit or interfere with access to the property. *Id.* at *8.

2.

Second, another Court in this District held that the Termination Act "completely preempts Plaintiff's state law claims." *14500 Ltd. v. CSX Transp., Inc.*, No. 1:12CV1810, 2013 WL 1088409, at *4 (N.D. Ohio Mar. 14, 2013). In that case, a trucking company brought an action against a railroad to quiet title due to adverse possession and a prescriptive easement. The trucking company encroached on a portion of the railroad's adjoining property, built a fence around it, and used it for twenty-one years. In upholding the railroad's preemption argument, the district court relied on *Union Pacific Railroad Co. v. Chicago Transit Authority*, 647 F.3d 675 (7th Cir.2011), and *B & S Holdings LLC v. BNSF Railway Co.*, No. 12CV387, 2012 WL 3966320 (E.D.Wash. Sept.11, 2012). Further, the court deferred to the Board's interpretation of the Termination Act under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–44 (1984). *See 14500*, 2013 WL 1088409, at *4–5. Based on federal preemption, the court denied a motion to remand the State-law quiet title claim. *Id.* at *5, *6. Later, on the merits, the court again recognized that the Termination Act preempted the trucking company's claims then referred the matter to the Board. *14500 Ltd. v. CSX Trans., Inc.*, No. 1:12-cv-01810, ECF No. 16, at 4, 7–8 (N.D. Ohio Nov. 18, 2013).

Ultimately, the Board agreed that the Termination Act preempted the claim for adverse possession. *14500 Ltd. LLC Petition for Declaratory Order*, No. FD 35788, 2014 WL 2608812, at *4 (June 4, 2014). Because it sought to deprive the railroad of its property, the Board also determined that the Termination Act preempted the

trucking company's prescriptive easement. *Id.* at \*5. In the Board's view, *14500* differed from *Ao-Zhou* because, on the facts presented, the prescriptive easement had the effect of depriving the railroad of property by ousting the railroad from using the property for railroad operations. *Id.*

\*   \*   \*

Based on *Ao-Zhou* and *14500*, the Board interprets the Termination Act as preempting adverse possession claims. But preemption of a prescriptive easement turns on the particular facts and circumstances. Neither presents categorical preemption constituting a *per se* interference with interstate commerce. Also, each authority depends on the Board's broad interpretation of its own jurisdiction and the concomitant reach of federal preemption of State property law. Under *Blissfield*, the law of this Circuit follows the Board's interpretation.

Norfolk Southern argues that this case resembles the dispute in *14500* because it argues Dille Road Recycling has excluded the railroad from the parcel at issue. For this reason, Norfolk Southern distinguishes *Ao-Zhou* where the landowner's use of the property still afforded the railroad access to the property. Relying on *14500*, Norfolk Southern argues for federal preemption of both Dille Road Recycling's claims based on adverse possession and a prescriptive easement.

**I.C.  Grade Crossing Dispute**

Dille Road Recycling argues that this case presents a routine grade crossing dispute, typically resolved in State court because federal law does not preempt such matters that fall within a State's police powers. "Crossing disputes, despite the fact

11

that they touch the tracks in some literal sense, thus do not fall into the category of 'categorically preempted' or 'facially preempted' state actions." *Barrois*, 533 F.3d at 333. This view tracks that of the Board. *Maumee & W. R.R. Corp. & RMW Ventures, LLC—Petition for Declaratory Order*, No. 34354, 2004 WL 395835, at *2 (Mar. 2, 2004). Instead, crossing maintenance constitutes a local concern, into which federal law does not generally intrude. *See Lehigh Valley R.R. Co. v. Board of Pub. Util. Comm'rs*, 278 U.S. 24, 35 (1928). Like the analysis discussed in *Ao-Zhou* and *14500*, courts analyze crossing disputes under the rubric of as-applied preemption, under which the touchstone remains the reasonableness of the burden on railroading. *See, e.g.*, *N.Y. Susquehanna & W. Ry. Corp. v. Jackson*, 500 F.3d 238, 253 (3d Cir. 2007).

Based on the pleadings before the Court, this dispute does not concern a grade crossing. Instead, the parties' claims and counterclaims involve exclusive right and title to property through adverse possession or non-exclusive use through a prescriptive easement or an easement by estoppel. In any event, each theory involves as-applied preemption, ultimately employing the same standard.

**I.D. Analysis**

Based on the arguments and authorities before the Court, the Termination Act preempts Dille Road Recycling from bringing an adverse possession claim. Admittedly, the key authorities at issue—*Ao-Zhou*, *14500*, and *Blissfield*—do not adopt the categorial approach to preemption for such claims. Yet each concludes, almost categorically, that adverse possession burdens railroad property by carving off parcels, interfering with interstate commerce by threatening rights of way and

12

railroading. Against this background, the Court fails to see how it can reach any conclusion other than that federal law preempts an adverse possession claim.

In contrast, Norfolk Southern's arguments that a claim for a prescriptive easement would be preempted cannot be adjudicated on a motion under Rule 12 based on the record before the Court. This is so because of the standard for as-applied preemption. Under Ohio law, a prescriptive easement bears similarities to adverse possession. *See, e.g.*, *Fling v. Daniel*, 2019-Ohio-1723, 130 N.E.3d 319, ¶ 9 (4th Dist.) (quoting *Dunn v. Ransom*, 4th Dist. Pike No. 10CA806, 2011-Ohio-4253, ¶ 77). Establishing a prescriptive easement requires demonstrating, by clear and convincing evidence, continuous use of the easement for twenty-one years. *Id.* (quotations omitted). Further, the use must be open, notorious, adverse, and continuous, though not necessarily exclusive. *Id.* at ¶¶ 9 & 10. In their respective pleadings, the parties agree that Dille Road Recycling's use of the parcel at issue likely satisfies these elements (assuming the periods of its predecessors tack). (*See* ECF No. 5, ¶6, PageID #27; ECF No. 12, PageID #65.)

But unlike adverse possession, a prescriptive easement does not take railroad property. *See Ao-Zhou*, 2012 WL 2047726, at *7. Instead, such an easement allows co-existing rail and non-rail uses. *Id.* Although the pleadings agree that Dille Road Recycling's use of the property has been exclusive, they are silent on whether Dille Road Recycling's use of the property necessarily excludes Norfolk Southern and on whether Dille Road Recycling's use burdens Norfolk Southern, rail use of the property, or interstate commerce more generally. Moreover, the authorities on which

13

Norfolk Southern relies allow for non-exclusive railroad use under the Termination Act. *See, e.g.*, *Ao-Zhou*, 2012 WL 2047726, at *6 (" Routine non-conflicting uses, such as non-exclusive easements for at-grade crossings, are not preempted, as long as they would not impede rail operations or pose undue safety risks."). If the facts turn out to show that Dille Road Recycling seeks to exclude Norfolk Southern from the property altogether, judgment in favor of the railroad may be appropriate. *See, e.g.*, *14500*, 2014 WL 2608812, at *5. Perhaps, the facts will show that Dille Road Recycling's use of the property is "so draconian that it prevents the railroad from carrying out its business in a sensible fashion." *Blissfield*, 550 F.3d at 539 (quotation omitted). But without further factual development, at this stage of the proceedings, the Court cannot conclude that the Termination Act would preempt a claim for a prescriptive easement.

## II. Easement by Estoppel

In its counterclaim, Dille Road Recycling asserts that it has an easement by estoppel under Ohio law. Under Ohio law, an easement confers a limited property interest in land the dominant estate may exercise at the expense of the servient estate. *McCumbers v. Puckett*, 183 Ohio App.3d 762, 2009-Ohio-4465, 918 N.E.2d 1046, ¶ 14 (12th Dist.) (citations omitted). Ohio law allows the creation of easement by estoppel as well as prescription. *Id.* (citing *Trattar v. Rausch* (1950), 154 Ohio St. 286, 95 N.E.2d 685, paragraph two of the syllabus).

Norfolk Southern argues that Dille Road Recycling's claim for an easement by estoppel does not survive the Rule 8 pleading standard because it amounts to a

14

conclusory allegation unsupported with plausible factual allegations. In the procedural posture at this stage of the proceedings, however, Dille Road Recycling receives the benefit of reasonable inferences as the non-movant, and the Court is obligated to construe the facts in its favor. Based on the pleadings, Dille Road Recycling has conducted its operations for quite some time without unduly interfering in railroad operations, and by extension interstate commerce. If the facts ultimately bear out this state of affairs, then federal law may not preempt Dille Road Recycling's claimed property rights under State law. Nor would federal law, in such circumstances bar a State remedy that does not unreasonably interfere in railroad operations. On the other hand, the company's fencing and truck scale may have the opposite effect. In either case, the as-applied preemption analysis requires more than the record presently before the Court.

Similarly, Norfolk Southern argues that it had no knowledge of Dille Road Recycling's use of the property until three or four years ago and that it promptly disclaimed that use, defeating Dille Road Recycling's claim for an easement as a matter of law. But Dille Road Recycling claims use (by its predecessors) of the property at issue for decades. At this stage of the proceedings, the parties' competing views require some discovery that forecloses judgment on the pleadings on the record as it stands.

For these reasons, Dille Road Recycling's claim based on an easement by estoppel withstands Norfolk Southern's motion for judgment on the pleadings. Further, Dille Road Recycling claims a *non-exclusive* easement by estoppel. (ECF No.

15

5, ¶ 19, PageID #29.) Norfolk Southern argues "non-exclusive" is a mere label the Court must ignore, but as discussed, the nature of the easement and its impact on Norfolk Southern's use of the property involve questions of fact that cannot be resolved on the pleadings. Accordingly, the limited nature of the easement claimed avoids federal preemption at this stage of the proceedings.

### III. Laches

Under Ohio law, laches constitutes an equitable principle signifying delay in the assertion of a right for an unreasonable period of time. *See, e.g.*, *Connin v. Bailey*, 15 Ohio St. 3d 34, 35, 472 N.E.2d 328, 329 (1984) (quotation omitted). To invoke laches, a defendant must show: (1) the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant, and (2) the delay prejudiced or injured the defendant. *See Costello v. United States*, 365 U.S. 265, 282 (1961); *see also Connin*, 15 Ohio St. 3d at 35, 472 N.E.2d at 329. Because the parties have competing views of the facts based on the record as it stands, the record requires some limited development before the Court properly can determine whether laches applies here.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Dille Road Recycling's motion for leave to file a surreply *instanter* (ECF No. 18), **GRANTS IN PART AND DENIES IN PART** Norfolk Southern's motion for judgment on the pleadings (ECF No. 12). Specifically, the Court grants the motion to the extent Norfolk Southern

16

seeks a declaration that federal law preempts a claim based on adverse possession. At the pleading stage, the record precludes judgment as a matter of law on Norfolk Southern's argument that federal law preempts claims for a prescriptive easement or easement by estoppel. Nor can the Court say, based on the record as it stands, whether laches applies.

Based on the foregoing ruling, the Court **DENIES** the motion to stay discovery (ECF No. 23) as moot. Before the telephone conference scheduled for February 22, 2021, the Court directs the parties to confer to ensure completion of the limited discovery necessary to resolve the parties' respective claims and defenses within the current schedule (ECF No. 11), which sets April 12, 2021 as the deadline for each party to file any dispositive motion. After conferring, if counsel agree that the telephone conference is not necessary, they should advise chambers.

**SO ORDERED.**

Dated: February 4, 2021

J. Philip Calabrese
United States District Judge
Northern District of Ohio

17